May it please the Court, Rebecca Jones appearing for Appellant Brian Fletcher. This morning I wanted to address two Sixth Amendment errors. I know that the Court granted a certificate of appealability only as to the Frazier issue, but I think with all due candor to the Court, the Feretta issue that I briefed as an uncertified issue is stronger than the Frazier issue. I think the Frazier issue merits review by the District Court. Well, there's no certification issued on it, and so I think if the Court wants to hear argument, we would certify the issue and hear argument and ask or receive argument on it and ask and allow the government time to respond. Okay. Well, I wasn't clear what the Court's procedure was because I recently had argument on a similar thing and they heard argument on both certified and uncertified issues at that time under the new rule. So if the Court's indicating that you don't want to hear argument on the Feretta issue, I'll address the Frazier issue. This is a case in which there was a complete breakdown in the attorney-client relationship because of comments made by defense counsel during a Marsden hearing that started in open court in front of the prosecutor and continued in chambers after the trial judge realized that this is the sort of thing that should have been kept confidential. The defense lawyer not only argued against his client, but effectively totally abandoned him during the Marsden hearing, insulted him, called him a liar and a backstabber, and then said that he would find it extremely difficult to be a vigorous advocate on the defendant's behalf because he knew things about the defendant that would make it extremely difficult to continue to represent him in a vigorous manner. Defense counsel also reported to the Court to sort of corroborate this, that he knew that Pellant had been trying to retain private counsel for a number of months, and defense counsel sort of put himself in a backup position to this retained, purported retained attorney who eventually was not allowed to come into the case. So there's some indication very early on that defense counsel may not have been completely prepared. There was abundant evidence on the record of an extraordinary amount of animosity between defense counsel and the appellant, and although the State Court of Appeals said that this was a sort of understandable, momentary outburst of anger, this Court's precedents have said that there are appropriate ways to deal with difficult clients if you're if you've got some conflict between the two of you, and one of the appropriate ways is not to argue against your client. The problem, of course, is that what we've said doesn't matter very much. The question is whether what the California Court of Appeals said is clearly contrary to clearly established Supreme Court law, which I assume would be Cronick and Kyler. That's true, Your Honor, and of course, there's so many different factual scenarios under which this sort of breakdown in the adversarial process can come up, and obviously not all of them have been before the United States Supreme Court, and I think for obvious reasons, there are very few instances of defense counsel sort of getting into it with his client on the record in any of the courts, any of the circuits or the Supreme Court, and the Supreme Court has not addressed the precise facts that this Court addressed in Frazier, but it nonetheless has recognized that the Sixth Amendment right to counsel can be undermined by the lack of a relationship between counsel, and I think this Court's precedent and the other circuit's precedent is certainly persuasive in describing what kind of activities between defense counsel and the defendant can result in such a breakdown. I don't think that under ADEPA, this Court has to say that we have seen the United States Supreme Court address exactly the same sort of factual scenario. We just have to say the Supreme Court has said if there's a complete breakdown in the adversarial process, that's a Sixth Amendment violation, and I think that if the lawyer and the defendant stop talking to each other, and if the lawyer and the defendant would have any confidence in his attorney anymore, then that would state a Sixth Amendment claim under ADEPA and under chronic. So then again, unfortunately because there's not a lot of these cases, we have to look at what this Court has said in the past in part of what are the sorts of situations, and we have a number of cases Well again, I just disagree with that. I mean, I think we have to look at what the Supreme Court has said, and what we've said doesn't really bear on it. Well, with all due respect, Your Honor, the problem with that, and I face that argument from the Attorney General in some of my other 2254 briefs, is that if you don't have a relatively close factual scenario that's gone before the United States Supreme Court, then basically the defendant, the criminal defendant who's trying to get into the courts through federal habeas is out of luck, and I don't think that's what Congress intended when it enacted ADEPA. I think it intended that there would be more deference to what the State courts are doing, and that the State courts are supposed to be guided by what's going on in the Supreme Court. I agree with that, but I think the fact that Supreme Court has made it awfully, awfully clear that it's their law that counts, not ours. I understand that to a certain extent, Your Honor, but I think, you know, if you look at, for example, Williams v. Taylor, which of course is one of the big cases about how does this whole ADEPA thing work. And if you look at Andrade, they said, you know, in case you guys didn't get it the first time, let's just make it really, really, really clear. It's our law that counts. No, I understand that, but the United States Supreme Court itself is reversing in ADEPA cases when there's a split in the circuits about what's the appropriate way to handle Williams, I believe, was an ineffective assistance of counsel claim, and that's where most of the reversals are coming under ADEPA in the United States Supreme Court. And so when they're reversing, there's a circuit court that disagreed with them, and there's a split, and still they're saying, you know, we haven't addressed this precise issue before, but we're saying it's worth reversal under ADEPA. So if the United States Supreme Court is willing to reverse when they themselves haven't addressed the same precise factual scenario before. That's them, and this is us. That's one difference. Well, I understand that, but I guess I'm saying that by analogy, they're not saying that the exact same issue has to have come before us before and been resolved by us before for the State court to have erred under ADEPA. Okay. I hear you. And I'd like to hear the rest of my time. Sure. Thanks. Mr. Robinson. Good morning. May it please the Court. Warren Robinson, Deputy Attorney General appearing for Respondent. A petitioner has claimed that Edwards argued against him at the pretrial hearing. Actually, Edwards was expressing the view that he wanted a continuance granted so Barry Post, the obtained returnee, could come in and he would no longer represent Fletcher. So in that sense, he was not arguing against Fletcher. Well, he kind of thrashed his client, albeit not in front of the jury, but certainly to the judge. And if you were the client, I suppose you would be somewhat upset to be represented by somebody who said you were a liar. Yes, because in another sense, it is true that Edwards did not support Petitioner. When Petitioner said, I have been receiving ineffective assistance of counsel, Edwards did not agree with that. And Petitioner, at least in the reply brief, seems to imply that an attorney should always support their client. But when a client is accusing an attorney of ineffective representation and making false representations in support of that accusation, there's no United States Supreme Court law that says that the attorney cannot tell the court that these representations are false. Now, in this case, Mr. Edwards should not have used the terms lied and lying. He should have simply told the court that the statement by Petitioner that Petitioner had not been introduced to an investigator was false. It may be just a difference of semantics, but certainly Edwards was entitled to or perhaps even under a duty to accurately tell the trial court what had happened and what preparations he had made. In this case, there was no indication at all that Mr. Edwards was ineffective at trial. There was no breakdown of the adversarial process in this case. He provided effective representation and Edwards was, excuse me, Fletcher was represented by a competent attorney in the trial court. And I think that's a very important part of the appeal. Anything else, Frank? Anything else? Nothing else. Okay. Thank you. Thank you. Ms. Jones. Thank you, Your Honor. With all due respect, there was more in the interaction going on with Mr. Edwards in the trial court than just saying, no, he's not telling the truth when he says he hasn't met my investigator. I mean, he said, this is a burden on me to have to represent somebody like this. It's going to be hard for me to be a vigorous advocate knowing what I know about him and watching him and observing him. I mean, that goes far beyond just answering the court's questions, which are fairly routine during a marsden hearing, you know, what have you done, how many witnesses have you interviewed, things to that respect. And as this Court said in Frazier, once you have some of these sorts of derogatory and demeaning comments, that every communication and every action by the lawyer after that point becomes suspect, and you can't trust what happens. So even though, you know, Respondent is saying we can look at the trial record and say that he was he didn't render an effective assistance of counsel, which I disagree with, and I've explained in my brief why I've disagreed with that. The problem is, is because we have this poisonous communication early on in the case, you don't know how, we don't know how the case would have turned out differently had the trial attorney not poisoned his relationship with the client. I mean, this is a lawyer who waived opening not once but twice, had no theory of defense that he presented in closing, joined motions that were not applicable to his client, filed no written motions in a lifetop murder case. I mean, there are, granted it was a difficult case, but the problem is, is that we have this poisonous, inappropriate, unethical breach of the duty of loyalty to the client that happens at the very beginning before the trial starts, and you can't trust anything at all that happens after that. In fact, you know, we have some of these, I've made the allegation in my brief that it appears that trial counsel hadn't prepared to examine some of the defense witnesses because he seemed to have been taken by surprise. Now, it's certainly plausible that one of the reasons he was taken by surprise or appeared to have been taken by surprise by some of what they said is because he wasn't communicating effectively with his client, you know. So I think the problem is you've got to look at this initial incident where the lawyer himself contributed to a complete breakdown in the adversarial process, poisoned his relationship with his client, who was his best source of information about how to try this case and how to try it effectively, and then say that poisoned the entire rest of the process and denied the defendant his Sixth Amendment right to counsel. And I would just close by really giving you the briefs again and consider the Paretta issue because I think that that was a very, very compelling issue, and I'd be perfectly happy to waive resolution of this pending additional briefing from the Attorney General on that case, on that issue. All right. Thank you, counsel. The matter just argued will be submitted. And we'll next hear argument in Jimenez.
judges: Browning, Magill, Rymer